LEIGH SHANKLIN, Plaintiff-Appellant, v. JOHN HUTZLER *et al.*, Defendants (J. Elmes *et al.*, Respondents in Discovery-Appellees; Ingalls Memorial Hospital *et al.*, Respondents in Discovery).

First District (6th Division)   No. 1—96—2415

Opinion filed December 5, 1997.—Rehearing denied March 13, 1998.

William J. Sneckenberg & Associates, Ltd., of Chicago (William J. Sneckenberg, of counsel), and Whalley & Kuchaes, of Merrillville, Indiana (Marshall P. Whalley, of counsel), for appellant.

Ruth E. VanDemark, of Chicago, for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff Leigh Shanklin appeals orders of the circuit court of Cook County denying plaintiff's motion for leave to amend her complaint and convert respondents in discovery James P. Elmes, M.D., and James P. Elmes, M.D., Ltd. (Elmes Ltd.), into defendants in a personal injury action. Defendant John Hutzler and respondents in discovery Ingalls Memorial Hospital (Ingalls); E. Winter, M.D.; J. Lohan, R.N.; Edward Unger, M.D.; A.J. Browner, M.D.; and G. Mooney, G.P.T., are not parties to this appeal.

This case is a subsequent appeal following this court's decision in *Shanklin v. Hutzler*, 277 Ill. App. 3d 94, 660 N.E.2d 103 (1995). The facts necessary to a disposition of this appeal are contained in that decision. However, for the purposes of this opinion, a recitation of the facts may be useful.

■ The record on appeal indicates the following facts. On December 6, 1991, plaintiff filed an unverified complaint against defendant Hutzler and defendant John Doe which also named the aforementioned medical care providers as respondents in discovery pursuant to section 2—402 of the Illinois Code of Civil Procedure (735 ILCS 5/2—402 (West 1996)) (Code). Section 2—402 provides in relevant part as follows:

> "§ 2—402. Respondents in discovery. The plaintiff in any civil action may designate as respondents in discovery in his or her pleading those individuals or other entities, other than the named defendants, believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action. ***
>
> Persons or entities so named as respondents in discovery shall be required to respond to discovery by the plaintiff in the same

manner as are defendants and may, on motion of the plaintiff, be added as defendants if the evidence discloses the existence of probable cause for such action.

\* \* \*

A person or· entity named as a respondent in discovery in any civil action may be made a defendant in the same action at any time within 6 months after being named a respondent in discovery, even though the time during which an action may otherwise be initiated against him or her may have expired during such 6 month period." 735 ILCS 5/2—402 (West 1996).

The complaint alleged that shortly before December 7, 1989, Hutzler, who resided in a separate condominium unit of plaintiff's building, violated a duty owed to his fellow residents by using unsafe electrical devices in his unit, thereby causing a fire that spread through the building, resulting in property damage and personal injury to the plaintiff. In particular, the complaint alleged that plaintiff suffered a trimalleolar fracture of the left lower extremity.

Plaintiff's complaint then details medical care she received for this fracture from the respondents in discovery. The complaint alleges that Dr. Elmes provided "consulting orthopedic services" and "performed an open reduction and internal fixation operation" on plaintiff. The complaint also alleges that after plaintiff was discharged from the hospital, she received follow-up treatment and evaluation from Dr. Elmes at the offices of James P. Elmes, M.D., Ltd. The complaint further alleges that plaintiff has continued to suffer with extreme mental and physical pain, has undergone several remedial surgeries and therapies, but remains permanently injured. The complaint attributes these continuing injuries at least in part to the negligence of John Doe and seeks discovery from the respondents in order to determine whether a cause of action exists against any or all of them.

The record includes a letter dated December 5, 1990 (approximately one year after the injury and one year before the filing of the complaint), from plaintiff to Ingalls requesting a complete copy of her medical records regarding her confinement from December 6, 1989, through December 13, 1989. The letter appears to be stamped with the date of December 12, 1990. The letter also appears to be stamped "ALL AVAILABLE INFORMATION SENT."

Dr. Elmes was served on January 12, 1992. From January 1992 through May 1992, plaintiff sought and received discovery materials, including the taking of depositions, from the respondents in discovery, including Dr. Elmes.

On June 4, 1992, plaintiff sought leave to file a first amended

complaint converting Ingalls, Dr. Elmes and Elmes Ltd. into defendants, pursuant to section 2—402. The motion stated:

"That the requirements of said statute and case law have been met by Plaintiff in that this motion has been filed within six (6) months of the filing of Plaintiff's Complaint against these Respondents in Discovery and that Plaintiff is, and will at the hearing of this matter, demonstrate probable cause to convert those Respondents in Discovery to Defendants by way of the attachment and incorporation of Plaintiff's First Amended Complaint and by producing at the hearing on this matter pertinent portions of the medical records, x-rays and other evidence obtained through discovery."

The record indicates that a copy of the original unverified complaint was attached to the motion. It appears that a proposed first amended complaint was not attached to the motion.

On August 11, 1992, Dr. Elmes joined in Ingalls' motion to dismiss, which was attached to Dr. Elmes' motion, though the location of the original Ingalls motion is not provided by the parties. The attached motion alleges that plaintiff failed to obtain leave of court or probable cause to convert Ingalls into a defendant within the applicable statute of limitations, as extended by section 2—402. On August 28, 1992, the trial court entered an order granting Ingalls' "ORAL" motion to dismiss. Plaintiff did not appeal that dismissal.

On September 1, 1992, plaintiff filed a three-count first amended complaint without leave of court. Count I was brought against Hutzler and largely repeated the allegations of the initial complaint. Count II was brought against Dr. Elmes, alleging negligence both in the initial surgery and the follow-up treatment provided to plaintiff. Count III was brought against Elmes Ltd. based on the theory of *respondeat superior*.

Two affidavits were attached to the first amended complaint. The first was signed by an orthopedic surgeon, Ian B. Fries, M.D. In the affidavit, Dr. Fries states that Dr. Elmes breached the applicable standard of care owed to plaintiff, causing substantial and permanent injury to the plaintiff. The second affidavit was executed by plaintiff's counsel, who attested that he had spoken with other physicians and that both he and Dr. Fries had determined that there was reasonable and meritorious cause for filing the action.

The trial court ultimately heard plaintiff's motion to convert and respondents' motion to dismiss on April 19, 1993. The transcript of this hearing indicates that the trial court stated that plaintiff filed her complaint on December 6, 1991, one day before the statute of limitations expired on December 7, 1991. The trial court stated that

plaintiff filed her motion to convert on June 4, 1992, two days before the expiration of the six-month extension provided by section 2—402. The trial court concluded that plaintiff had met the procedural requirements of section 2—402 relating to timeliness and notice of the motion to convert.

However, the transcript indicates that the trial court also concluded that plaintiff was required to file her probable cause materials within the six-month time period specified in section 2—402 and that the affidavits of Dr. Fries and plaintiff's attorney did not establish probable cause. The transcript indicates that plaintiff's attorney raised a question as to whether the statute of limitations had run; the trial court indicated that plaintiff could raise the issue in a motion to reconsider. Accordingly, the trial court entered an order denying plaintiff's motion to convert and granting respondents' motion to dismiss.

On the afternoon of April 19, 1993, plaintiff filed with the court volumes of discovery materials which had been presented during that morning's hearing. Plaintiff also filed a verified first amended complaint without leave of court at that time. The verified first amended complaint included allegations that plaintiff did not have reason to know of Dr. Elmes' negligence until November 1990, thus extending the statute of limitations to November 1992.

On April 27, 1993, plaintiff filed a "Renewed Motion for Leave to File Verified Second Amended Complaint Converting Certain Respondents to Defendants," which was largely similar to plaintiff's prior pleadings. On April 29, 1993, plaintiff filed another affidavit by Dr. Fries in support of the motion to convert. The new affidavit was largely similar to Dr. Fries' prior affidavit, except that it contained allegations of specific failures of Dr. Elmes that Dr. Fries believed were negligent.

On May 17, 1993, plaintiff filed her motion to reconsider. The trial court heard the motion to reconsider on July 28, 1993. The transcript of proceedings indicates that the trial court concluded that even assuming that the statute of limitations did not expire until November 1992, the six-month period specified by section 2—402 expired before November 1992 and did not extend the statute of limitations beyond November 1992. The trial court also concluded that plaintiff failed to obtain leave of court to amend her complaint by May 1993. The trial court entered an order denying plaintiff's motion to reconsider. Plaintiff filed a timely notice of appeal to this court.

This court dismissed the appeal for lack of jurisdiction. *Shanklin*, 277 Ill. App. 3d at 94, 660 N.E.2d at 103. This court held that the orders appealed from were not final as to all parties, as there was no

indication in the record regarding an adjudication of defendant Hutzler's rights or liabilities. *Shanklin*, 277 Ill. App. 3d at 99-100, 660 N.E.2d at 106. This court also considered a May 26, 1994, order purporting to amend the April 19, 1993, order *nunc pro tunc* to include a written finding that there was no just reason for delaying the enforcement or appeal from its order, pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). This court ruled that the May 26, 1994, order was not effective to confer jurisdiction on the appellate court because: (1) there was no determination by the trial court that the proposed amendment fell within the scope of Supreme Court Rule 329 (107 Ill. 2d R. 329); (2) the order appealed from was not final and appealable prior to the proposed amendment; and (3) plaintiff did not seek to amend the notice of appeal or file a second notice of appeal. *Shanklin*, 277 Ill. App. 3d at 101, 660 N.E.2d at 107.

Plaintiff then apparently petitioned for leave to appeal to the Illinois Supreme Court, as it denied plaintiff's petition on April 3, 1996. *Shanklin v. Hutzler*, 166 Ill. 2d 554, 664 N.E.2d 648 (1996). The case was then apparently returned to the circuit court, which apparently entered an order on June 14, 1996, dismissing Hutzler as a defendant. The plaintiff does not identify where this order appears in the record. Nor does plaintiff identify where the July 3, 1996, notice of appeal appears in the record on appeal.

However, on July 23, 1996, the respondents in discovery filed a motion to dismiss the appeal for lack of jurisdiction; the June 14, 1996, order and July 3, 1996, notice of appeal are attached as exhibits to the motion. Plaintiff objected to the motion. On September 20, 1996, this court entered an order taking the motion to dismiss with the case.

I

Initially, this court addresses the question of this court's jurisdiction. Respondents in discovery note that this court held that a May 26, 1994, order purporting to amend the April 19, 1993, order *nunc pro tunc* to include a written finding that there was no just reason for delaying the enforcement or appeal from its order, pursuant to Supreme Court Rule 304(a), was not effective to confer jurisdiction on the appellate court. *Shanklin*, 277 Ill. App. 3d at 101, 660 N.E.2d at 107. Thus, relying on *Maywood-Proviso State Bank v. Village of Lisle*, 234 Ill. App. 3d 206, 214, 599 N.E.2d 481, 487 (1992), respondents in discovery maintain that the trial court retained jurisdiction and that the April 19, 1993, order became final and appealable as of May 26, 1994, when the Rule 304(a) finding was entered. Thus, respondents in discovery claim that this court lacks jurisdiction because plaintiffs did not file a notice of appeal within 30 days of May 26, 1994.

■ However, in *Maywood-Proviso State Bank*, the ostensibly *nunc pro tunc* Rule 304(a) finding was entered prior to any notice of appeal being filed. *Maywood-Proviso State Bank*, 234 Ill. App. 3d at 214, 599 N.E.2d at 487. In this case, plaintiff had already filed a notice of appeal when the trial court attempted to enter the Rule 304(a) finding *nunc pro tunc*. Thus, the *nunc pro tunc* order in *Maywood-Proviso State Bank* was not an attempt to remedy a jurisdictional defect. A *nunc pro tunc* order cannot be used to supply omitted judicial action or remedy a jurisdictional defect. *Beck v. Stepp*, 144 Ill. 2d 232, 238, 579 N.E.2d 824, 827 (1991). Yet the record on appeal shows that such ends were precisely what the parties sought to accomplish in this case.

Respondents in discovery argue that the *nunc pro tunc* order may be separated into two parts: a void *nunc pro tunc* aspect and a valid Rule 304(a) finding. Where parts of an order are clearly separable, only that part which is in excess of the authority granted to the court is void. *Chapman, Mazza, Aiello, Inc. v. Ace Lumber & Construction Co.*, 83 Ill. App. 2d 320, 335, 227 N.E.2d 562, 570 (1967). In this case, we conclude that the parts of the order at issue are not *clearly* separable. Rather, they were both integral to the parties' attempt to remedy a jurisdictional defect in a pending appeal. Thus, we conclude that the May 26, 1994, order is ineffective in its entirety, given the record on appeal in this case.

In sum, the May 26, 1994, order did not render the prior orders involving the respondents in discovery final as of May 26, 1994. Respondents in discovery raise other objections to the form of the notice of appeal, such as the failure to list the June 14, 1996, order, but such defects are generally not fatal to an appeal. *E.g., Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 662 N.E.2d 602 (1996). Accordingly, we conclude that, given the facts and circumstances in this case, plaintiff's appeal was not untimely and we now turn to address the other issues raised in this appeal.

II

■ The first question is whether the trial court erred in granting the motion of respondents in discovery to dismiss them for failure to add them as defendants within the statute of limitations. Dismissals based on the statute of limitations are governed by section 2—619 of the Code of Civil Procedure. 735 ILCS 5/2—619 (West 1996). The granting of a section 2—619 motion to dismiss is given *de novo* review on appeal. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732, 735 (1993).

■ Section 2—619 permits motions to dismiss to be made by a

"[d]efendant" or "any other party against whom a claim is asserted." 735 ILCS 5/2—619(b) (West 1996). A nonparty cannot seek dismissal pursuant to section 2—619. See *Conley v. Rust*, 12 Ill. App. 3d 26, 297 N.E.2d 397 (1973) (interpreting predecessor section 48). This court has held that (at least for the purposes of section 2—619) persons and entities named as respondents in discovery are not parties to the action in which they are so named. *Engel v. St. Mary's Hospital*, 198 Ill. App. 3d 174, 177, 555 N.E.2d 810, 811 (1990). Section 2—402 expressly permits respondents in discovery to file a motion to convert themselves into defendants but is silent regarding any other motion. See 735 ILCS 5/2—402 (West 1996). Thus, the motion to dismiss was improper and the trial court erred in granting it.

## III

The question remains however, as to whether the trial court erred in denying plaintiff's motion to convert and amend. The trial court concluded that plaintiff had met the procedural requirements of section 2—402 relating to timeliness and notice of the motion to convert. However, the trial court also concluded that plaintiff was required to file her probable cause materials within the six-month time period specified in section 2—402 and that the affidavits of Dr. Fries and plaintiff's attorney did not establish probable cause.

■ However, this court has stated that "section 2—402 does not require that the evidence supporting a finding of probable cause be filed prior to the hearing." *Coley v. St. Bernard's Hospital*, 281 Ill. App. 3d 587, 595, 667 N.E.2d 493, 498 (1996). This court has also held that section 2—402 may be read *in pari materia* with section 2—622 (735 ILCS 5/2—622 (West 1996)), which requires that a plaintiff file an affidavit and a medical report that the plaintiff has a reasonable and meritorious cause of action. *Coley*, 281 Ill. App. 3d at 592, 667 N.E.2d at 497; *Moscardini v. Neurosurg, S.C.*, 269 Ill. App. 3d 329, 336, 645 N.E.2d 1377, 1382 (1994). Section 2—622 demonstrates that the legislature is perfectly capable of expressly requiring the submission of affidavits or other materials.

■ Respondents rely on *Browning v. Jackson Park Hospital*, 163 Ill. App. 3d 543, 516 N.E.2d 797 (1987), in which the plaintiff had the section 2—402 motion granted as a routine motion without a hearing and attached no affidavits or other supporting materials. This court stated:

> "We hold that plaintiffs must request probable cause hearings on their motions to convert respondents to defendants in order to show that they have the evidence required by the statute. In the case at bar plaintiff made no such showing and he specifically asked the court *not* to hold a hearing on the motion to add

respondents as defendants by filing it as a routine motion. Since plaintiff made no attempt to present the evidence needed to support his motion to add [respondents] as defendants within six months of naming them as respondents in discovery, we affirm the trial court's decision to dismiss the complaint as to these defendants." (Emphasis in original.) *Browning*, 163 Ill. App. 3d at 548-49, 516 N.E.2d at 801.

Respondents' brief quotes the first and third sentences just quoted, but omits the second. In this case, however, plaintiff did not ask the court *not* to hold a hearing on the motion to add respondents as defendants by filing it as a routine motion.

In *Froehlich v. Sheehan*, 240 Ill. App. 3d 93, 102, 608 N.E.2d 889, 896 (1992), this court followed *Browning*, but added in *dicta* that the result would be the same even if the motion had not been placed on the routine motion call because the original motion there "was accompanied by no evidence whatsoever." *Froehlich*, 240 Ill. App. 3d at 102, 608 N.E.2d at 896. However, in *Froehlich*, the appellate court was presented with a case where the trial court had initially granted the plaintiff's motion to convert. Certainly, a trial court may not find probable cause based on "no evidence whatsoever." In this case, while plaintiff did not attach affidavits to the motion to convert, plaintiff submitted them to the trial court prior to the hearing on the matter. The record shows that the affidavits were similar to those at issue in *Moscardini*. The record also shows that plaintiff informed the trial court of additional evidentiary material plaintiff could present on the day of the hearing. Given the facts and circumstances of this case, this court is persuaded that *Coley* and *Moscardini* are more applicable than *Browning* and *Froehlich*.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BUCKLEY and O'BRIEN, JJ., concur.